UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. NEXSTAR MEDIA, INC. d/b/a KFOR-TV;<br>2. DYLAN BROWN;<br>3. KEVIN JOSEFY; and<br>4. GAGE SHAW,<br><br>    *Plaintiffs*,<br><br>v.<br><br>1. RYAN WALTERS, State Superintendent of Public Instruction; and,<br>2. DAN ISETT, Press Secretary for the Oklahoma State Department of Education, in their official and individual capacities;<br><br>    *Defendants*. | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF<br><br>Case No. CIV-24-980-J |

INTRODUCTION

Government officials cannot bar journalists from accessing and gathering news. The First Amendment prohibits government officials from arbitrarily denying reporters access to official information, and from discriminating against reporters based on their viewpoint. But state education officials are doing just that—physically targeting journalists at Oklahoma's oldest news television station for exclusion when they try to cover the state education board meetings or the state superintendent of education.

Oklahoma State Superintendent of Public Instruction Ryan Walters, and Oklahoma State Department of Education ("OSDE") Press Secretary Dan Isett, have arbitrarily deemed KFOR-TV, the state's oldest television station long-recognized for outstanding journalism, to be not "legitimate" or undeserving of the "privilege(s) of the press." Accordingly, when KFOR-TV reporters try to attend board meetings, Defendants force them into an "overflow" room, unlike other media, though the board meeting can easily accommodate them. When KFOR-TV reporters attempt to enter the Superintendent's press conferences, Defendants herd them right back out and tell them "No," closing the door on them.

Absent injunctive relief, KFOR-TV and its reporters, who are already properly credentialed, will continue to be unfairly limited in their ability to observe and report on the State Board of Education meetings and participate

2

in press conferences. This Court should secure KFOR-TV and its reporters' First Amendment rights to perform their vital press functions.

## JURISDICTION

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as Plaintiffs allege that Defendants are violating 42 U.S.C. § 1983 by depriving them, under color of state law, of rights, privileges, and immunities secured by the First and Fourteenth Amendments to the United States Constitution.

## VENUE

2. This Court is the proper venue for this action per 28 U.S.C. § 1391(b) as a substantial part of the events and omissions giving rise to the claim have occurred and are occurring in this judicial district.

## PARTIES

3. Plaintiffs Nexstar Media, Inc. is a Texas corporation headquartered in Irving, Texas. Nexstar Media, Inc. owns KFOR-TV, an NBC-affiliated television station broadcasting in Oklahoma City, Oklahoma.

4. Plaintiff Dylan Brown is a Weekend Anchor and Reporter for KFOR-TV. He reports on matters concerning the OSDE, State Board of Education and Superintendent Walters.

5. Plaintiff Kevin Josefy is a photojournalist for KFOR-TV. He is frequently assigned to photograph and record material for reporting on the OSDE, State Board of Education and Superintendent Walters.

6. Plaintiff Gage Shaw is a photojournalist for KFOR-TV. He is frequently assigned to photograph and record material for reporting on the OSDE, State Board of Education and Superintendent Walters.

7. Defendant Ryan Walters is the State Superintendent of Public Instruction and a Member of the State Board of Education. He is sued in his official and individual capacities.

8. Defendant Dan Isett is the Press Secretary for the OSDE. He is sued in his official and individual capacities.

STATEMENT OF FACTS

*KFOR-TV*

9. KFOR-TV is an NBC-affiliated television station (channel 4) and news website in Oklahoma City, Oklahoma, owned by Nexstar Media, Inc.

10. As Oklahoma's first television station, KFOR-TV has been keeping Oklahomans informed of the news since June 1949.

11. KFOR-TV produces 11 newscasts every weekday. According to Nielsen data, KFOR-TV had 105,878 viewers during one week (Monday to Friday) between 6:00 a.m. and 6:00 p.m. in July 2024. This makes KFOR-TV one of the strongest NBC affiliates in the country. Among the market's local

4

television newscasts, KFOR-TV has consistently placed first or second for the past four decades.

12. KFOR.com and KFOR's social media presence are dominant in the Oklahoma City area as well. KFOR.com gets over 44,000 website-visitors daily and has over 519,000 Facebook followers, 126,000 X followers and 52,000 Instagram followers. The stories posted on KFOR.com are frequently linked to by other major media websites such as CNN, ABC, MSNBC and FOX.

13. KFOR-TV has received widespread recognition for its excellence in journalism and reporting over the years. It has won three national Emmys and dozens of regional Emmys for its transformational journalism. It has also won several Edward R. Murrow awards, given to those who demonstrate journalistic ethics and technical expertise as well as exemplify the importance and impact of journalism as a service to the community.

14. In 1995, KFOR-TV won the Peabody Award (one of the highest honors in journalism) for its coverage of the Oklahoma City Bombing that same year. KFOR-TV was nominated for another Peabody Award for its coverage of the wrongful conviction of a man who spent 48 years in an Oklahoma prison. KFOR's coverage of his case helped lead to his exoneration. He is now a free man and is the longest serving exoneree in America.

15. Earlier this summer, KFOR-TV received a citation of recognition from the State of Oklahoma in appreciation of the journalism and community work it has done for the past 75 years.

*KFOR-TV's Reporting on the OSDE and Superintendent Walters*

16. KFOR-TV reports both national and local news stories.

17. As part of its local coverage, KFOR-TV reports on the Oklahoma State School Board and Superintendent Walters. To do so, KFOR-TV reporters, including Brown, Josefy and Shaw, must attend Walters' press conferences, and the monthly state school board meetings run by Defendant Walters and the other State Board Members, which take place in the Oliver Hodge Building or State Capitol (collectively "Capitol Complex").

18. Walters frequently holds press conferences following board of education meetings, in which he discusses recent OSDE events and takes questions from reporters.

19. These board meetings and press conferences occur in the Capitol Complex in Oklahoma City.

20. The Oklahoma State School Board is comprised of Defendant Superintendent Walters and five appointed State Board Members, who are not party to this suit.

21. The Legislative Services Bureau issues press credentials for access to the Capitol Complex. The press credentials permit news media into

numerous areas of the Capitol Complex, including where State Board of Education meetings and Walters' press conferences take place.

22. KFOR-TV has received press credentials every year since the credentialling system began in 2022. It presently holds two such credentials, which are available for use by any KFOR-TV employees who cover stories within the Capitol complex.

23. As one of KFOR's two "Capitol Bureau" reporters, Dylan Brown is often assigned to these stories.

24. Despite having press credentials, Brown and his photojournalists have been repeatedly denied the ability to access and report on State Board of Education meetings and participate in Walters' press conferences. Other members of the media are permitted to attend the board meetings in person, and the meeting room can accommodate KFOR-TV personnel. Despite this, Defendants require KFOR-TV reporters to sit in an "overflow" room and watch the meeting via video feed. No other media members are denied access to the meeting room.

25. So far this year, Defendants have placed KFOR-TV reporters in the overflow room during State Board of Education meetings on March 28th, June 27th, July 31st, and August 22nd.

26. Plaintiffs expect that Defendants will similarly exclude KFOR-TV reporters from the next State Board of Education meeting scheduled for September 26, 2024 and at meetings indefinitely into the future.

27. As for Walters' press conferences, Isett has routinely denied KFOR-TV reporters' access to Walters and the room where those press conferences take place as well.

28. This year, Defendant Walters and Defendant Isett denied KFOR-TV reporters from accessing Walters and his press conferences on March 28th, June 27th, July 31st, and August 22nd.

29. Plaintiffs expect that KFOR-TV reporters will be excluded from any press conference in conjunction with the September 26th State Board of Education meeting and at any future press conference held by Walters.

30. Neither Walters, nor Isett, have explained to KFOR-TV or its reporters why they are being denied access to board meetings and press conferences.

31. As described below, however, Isett has indicated KFOR-TV, as an entity, is targeted for exclusion.

32. Neither Walters, nor Isett, have articulated or published explicit and meaningful standards that govern the denial of live access to board meetings or any access to Walters' press conferences by reporters.

33. The most recent interactions between KFOR-TV reporters and Defendants in which Defendants denied KFOR-TV reporters the ability to newsgather and access news areas afforded to other members of the media have been captured on video and are detailed herein.

*July 31, 2024 - Defendants Deny Brown and Josefy Access to a State Board of Education Meeting and Walters' Press Conference*

34. On July 31, 2024, KFOR-TV reporter Dylan Brown and photojournalist Kevin Josefy attempted to attend a State Board of Education meeting. Defendants admitted other members of the media into the room where the board meeting was being held but sent Brown and Josefy to the overflow room to watch a livestream of the meeting, although they could have been accommodated at the meeting room.

35. Defendants did not place any other members of the media in the overflow room for that board meeting.

36. Walters held a press conference following the board meeting.

37. Josefy and Brown also attempted to attend the press conference, but Isett stopped them before they reached the doorway.

38. The following interaction ensued:

| | |
|---|---|
| Brown: | "So we can't ask questions?" |
| Isett: | "No" |
| Brown: | "We can't ask him questions?" |
| Isett: | "No….that's a privilege for press." |
| Brown: | "We are press." |
| Isett: | "You're not…your station isn't." |

9

| | |
|---|---|
| Josefy: | "You're saying we aren't a legitimate news organization? Is that what you are trying to say?" |
| Isett: | "Yes." |
| Josefy: | "You're saying that KFOR, that's been here for 75 years…" |
| Isett: | "That's exactly what I'm saying." |
| Josefy: | "….serving the public…." |
| Isett: | "Dylan already knows this." |
| Brown: | "Can I…" |
| Josefy: | "…helping people..." |
| Isett: | "…you can ask him from outside." |
| Josefy: | "We're not legitimate news?" |
| Brown: | "We're not?" |
| Isett: | "I didn't say you weren't legitimate news. I didn't say you had a credential for this." |
| Isett's Assistant: | "I have an urgent thing I need you for." |
| Josefy: | "So you are showing favoritism to all of the other news stations and denying us access to a public official? Is that what you are doing? You are denying us access to a public official? For public business?" |
| Isett: | "You are in all the public spaces." |
| Josefy: | "Then we can go down there in a public space." |
| Brown: | "Isn't that…is that not a public space?" |
| Josefy: | "That room is a public space." |

39. After denying Brown and Josefy access, Isett walked away.

40. A video of the interaction between Isett, Brown and Josefy can be found at: https://bit.ly/4guiK65.

*August 16, 2024 – Brown Attempts to Interview Superintendent Walters*

41. On August 16, 2024, Superintendent Walters and Isett were walking through the public hallways of the State Capitol Complex.

10

42. Brown and photojournalist Gage Shaw, who were also present in the hallway, approached Walters while holding his KFOR-TV microphone and identifying himself as "Dylan Brown with KFOR."

43. As soon as Brown identified himself, Walters responded, "Oh no, no, no, no, no" and walked away. Simultaneously, Isett approached Brown and Shaw, placing his hands on Brown, again, without Brown's consent, stated "No." Isett then followed Walters.

44. Brown attempted to finish the question he had approached Walters with, stating "You guys have left us out [of the press conferences]?" To which Isett immediately turned and, while pointing his finger at Brown, responded "There's a reason for that."

45. Brown persisted. "We have valid reports, why are you leaving KFOR out of everything?"

46. Again, Isett placed his hands on Brown, preventing him from following Walters down the hallway any further. As he did so, Isett stated "We're done. You got your answers, you asked three questions, you're good."

47. Having been denied another opportunity at press access, Brown and Shaw turned and left.

48. A video of the interaction between Isett, Brown and Shaw can be found at: https://bit.ly/4d8pjbN.

*August 22, 2024 – Brown and Josefy are Denied Access to Another Board Meeting and Press Conference*

49. On August 22, 2024, Brown and Josefy attempted to attend the regularly scheduled State Board of Education meeting. Other members of the media were permitted into the room where the board meeting was being held. Brown and Josefy, however, were again the only media sent to the overflow room, although they could have been accommodated at the board meeting.

50. Brown and Josefy also attempted to attend Walters' press conference following the August 22nd board meeting.

51. As soon as Brown and Josefy attempted to enter the room where the press conference was being held, Isett approached them. Isett, once again, placed his hands on Brown and blocked him from the room. The following interaction took place:

| | |
|---|---|
| Isett: | "No." |
| Brown: | "Can you give me a reason why?" |
| Isett: | "No." |
| Brown: | "I want a good solid reason why. I want a good solid reason why, sir. I want you to give me a reason why." |
| Isett: | "We'll see you later." |

*Isett begins to close the door.*

| | |
|---|---|
| Brown: | "I'm asking you a legitimate question. If you close that door on me you're restricting my First Amendment rights of access to a public official, sir. That's what you're doing. Oh you're going to leave it open? So can I come in? I can't come in." |

*Door closes.*

52. Thus, again, Brown and Josefy were denied access to Walters' press conference.

53. A video of the interaction between Isett, Brown and Josefy can be found at: https://bit.ly/4e5Xv94.

54. Other news media witnessed the interaction. For instance, a photojournalist for the Tulsa World Newspaper, Mike Simons, captured the exchange in the photographs. The photographs depict Isett approaching Brown and Josefy then placing his hands on Brown to block Brown's entry into the press conference area.



55. Simons also posted about the incident on X. In his post, Simons stated that he had asked Isett why the KFOR-TV reporters were denied access to the press conference. In response, Isett told Simons "I don't think they're a legitimate news organization."

13



56. The Society of Professional Journalists also weighed in on this event. In an August, 23, 2024 article, the SPJ stated that it "strongly condemns the Oklahoma State Department of Education's decision to deny KFOR-TV journalists access to a news conference with State Superintendent Ryan Walters in Oklahoma City."[1] The SJP reported that when it reached out to Isett for a comment on his denial of KFOR-TV's access, Isett responded, "Our office works with hundreds of journalists across the state and around the country to keep the public informed about the success Oklahoma students are seeing under Superintendent Walters. We will not work with tabloids who consistently editorialize and report false information rather than inform the public."

---

[1] Blaize-Hopkins, Ashanti, *SPJ strongly condemns Oklahoma Dept. of Ed. for denying journalists access to news conference*, Society of Professional Journalists (Aug. 23, 2024), https://perma.cc/2FKJ-73XR

14

COUNT ONE
RIGHTS OF FREE SPEECH AND PRESS
U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
ARBITRARY AND DISCRIMINATORY DENIAL OF PRESS ACCESS
AGAINST ALL DEFENDANTS

57. Plaintiffs reallege and incorporate paragraphs 1 through 56.

58. By denying Plaintiffs access to Oklahoma State Board of Education meetings and Walters' press conferences equal to that afforded to other media representatives, Defendants are violating Plaintiffs' rights to free speech and freedom of the press under the First Amendment, as applied to the states through the Fourteenth Amendment.

59. Plaintiffs have the same First Amendment rights to gather and report information from the State Board of Education meetings and Walters' press conferences that are enjoyed by other credentialed media representatives.

60. Defendants' arbitrary denial of press access against Plaintiffs has deprived them of their First Amendment speech and press rights. Defendants lack compelling reasons to deprive Plaintiffs of these rights.

61. Although Plaintiffs have been given press credentials by the Legislative Services Bureau and are part of a well-established news organization, Isett denied Plaintiffs the ability to newsgather and access other areas provided for the press by claiming they are not a "legitimate" news organization.

62. The First Amendment does not permit government officials to deny journalists the ability to newsgather based on arbitrary determinations of whether they are "legitimate" or not.

63. Defendants' denial of Plaintiffs' access to the State Board of Education meetings and Walters' press conferences fails any level of First Amendment scrutiny.

64. By arbitrarily denying Plaintiffs' press access, Defendants, under color of law, have violated and continues to violate Plaintiffs' First Amendment rights to free speech and press. Accordingly, Defendants injured, and continue to injure, Plaintiffs in violation of 42 U.S.C. § 1983. Plaintiffs are entitled to declaratory and preliminary and permanent injunctive relief against the continued enforcement and maintenance of Defendants' unconstitutional customs, practices, and policies; and to recover their attorneys' fees and expenses under 42 U.S.C. § 1988.

COUNT TWO
RIGHTS OF FREE SPEECH AND PRESS
U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
CONTENT AND VIEWPOINT DISCRIMINATION
AGAINST ALL DEFENDANTS

65. Plaintiffs reallege and incorporate paragraphs 1 through 56.

66. Defendants' policy and practice of denying Plaintiffs' access to State Board of Education meetings and Walters' press conferences

unconstitutionally discriminates against speech and members of the press based on content and viewpoint.

67. To the extent that Defendants discriminate against speech and press merely based on content, it fails strict scrutiny.

68. Defendants have no compelling governmental interest in denying credentialed KFOR-TV reporters access to the press area or Walters' press conferences on grounds that their news organization is not "legitimate" or is a "tabloid[] who consistently editorialize and report false information." This is discrimination against speech and press on the basis of viewpoint, which is unconstitutional per se.

69. By engaging in content- and viewpoint-based discrimination to deny Plaintiffs access to board meetings and press conferences, Defendants, under color of law, have violated and continue to violate Plaintiffs' First Amendment rights to free speech and press. Accordingly, Defendants injured, and continue to injure, Plaintiffs in violation of 42 U.S.C. § 1983. Plaintiffs are entitled to declaratory and preliminary and permanent injunctive relief against Defendants continued practice of limiting access to State Board of Education meetings and Walters' press conference to only those news organization they deem to be "legitimate," and to recover their attorneys' fees and expenses under 42 U.S.C. § 1988.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

A. Orders preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from (1) denying Plaintiffs access to the room in which Oklahoma State Board of Education meetings are held; (2) denying Plaintiffs access to and participation in Walters' press conferences; and (3) physically obstructing, touching, or impeding Plaintiffs' reporters when they do access the in-person Oklahoma State Board of Education meetings or Walters' press conferences;

B. Declaratory relief consistent with the injunction;

C. Nominal Damages in the amount of $17.91;

D. Costs of suit;

E. Attorneys' fees pursuant to 42 U.S.C. § 1988; and

F. Any other relief this Court may grant in its discretion.

| | |
|---|---|
| Respectfully submitted. | Dated: September 23, 2024 |
| Charles Miller* | *s/ Robert D. Nelon* |
| Ohio Bar No. 0073844 | Robert D. Nelon, OBA #6610 |
| Courtney Corbello* | HALL, ESTILL, HARDWICK, GABLE, |
| Trial Counsel | GOLDEN & NELSON, P.C. |
| Texas Bar No. 24097533 | 100 North Broadway, Suite 2900 |
| INSTITUTE FOR FREE SPEECH | Oklahoma City, OK 73102 |
| 1150 Connecticut Ave., NW | Telephone: (405) 553–2828 |
| Suite 801 | Facsimile: (405) 553–2855 |
| Washington, D.C. 20036 | bnelon@hallestill.com |
| Tel: (202) 985-1644 | *Counsel for Plaintiffs* |
| Fax: (202) 301-3399 | |
| cmiller@ifs.org | |
| ccorbello@ifs.org | |
| *Counsel for Plaintiffs* | |
| *pro hac vice admission being sought* | |