UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

NEXSTAR MEDIA, INC. d/b/a KFOR-TV,
et al.,

      *Plaintiffs*,

v.

RYAN WALTERS, et al.,

      *Defendants*.

Case No. 5:24-cv-00980-J

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES PURSUANT TO 42 U.S.C. § 1988(B)

TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

RELEVANT FACTUAL BACKGROUND ............................................................1

ARGUMENT.......................................................................................................3

    I.    THE LODESTAR FRAMEWORK .................................................4

        A.  The reasonable hourly rates should be calculated at the rate of Washington, D.C. attorneys .........................................................5

        B.  In the alternative to awarding D.C. rates, the quality of counsels' work and unnecessarily protracted nature of this litigation justifies a lodestar multiplier of any Oklahoma City-based rate .........................................................................8

        C.  Each attorney's background should be considered ......................12

        D.  Counsels' hours are reasonable ...................................................13

    II.    PLAINTIFFS ARE ENTITLED TO COMPENSATION FOR TIME SPENT ON THIS MOTION ...........................................................14

    III.    PLAINTIFFS ARE ENTITLED TO REASONABLE COSTS OTHER THAN ATTORNEYS' FEES.......................................................15

CONCLUSION ...................................................................................................16

TABLE OF AUTHORITIES

<u>CASES</u>

*Blum v. Stenson*,
  465 U.S. 886 (1984)............................................................6, 13

*Branzburg v. Hayes,*
  408 U.S. 665 (1972)..............................................................4

*Brown v. Gray,*
  227 F.3d 1278 (10th Cir. 2000)..................................................15

*Case v. Unified School District No. 233, Johnson County, Kansas*,
  157 F.3d 1243 (10th Cir. 1998)..................................................13

*Catholic Benefits Ass'n LCA v. Azar*,
  No. CIV-14-240-R, 2018 WL 3876615 (W.D. Okla. Aug. 15, 2018)......................9

*City of Riverside v. Rivera*,
  477 U.S. 561 (1986)..............................................................4

*D.H. v. Ponca City Indep. Sch. Dist. No. 71*,
  No. 06-CV-523 CVE-SAJ, 2007 U.S. Dist. LEXIS 66427
  (N.D. Okla. Sep. 7, 2007)........................................................16

*Ellis v. University of Kansas Medical Center*,
  163 F.3d 1186 (10th Cir. 1998)...................................................3

*Farrar v. Hobby*,
  506 U.S. 103 (1992)............................................................3, 4

*Fox v. Vice*,
  563 U.S. 826 (2011)..............................................................3

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)......................................................3, 4, 5, 13

*Inst. for Just. v. Laster*,
  No. CIV-19-858-D, 2022 U.S. Dist. LEXIS 231068 (W.D. Okla. Dec. 23, 2022)........9

*Iqbal v. Golf Course Superintendents Ass'n*,
  900 F.2d 227 (10th Cir. 1990)...................................................14

*Jane L. v. Bangerter*,
    61 F.3d 1505 (10th Cir. 1995)...................................................................6, 15

*Littlefield v. Deland*,
    641 F.2d 729 (10th Cir. 1981).........................................................................14

*Mares v. Credit Bureau of Raton*,
    801 F.2d 1197 (10th Cir. 1986).......................................................................14

*Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    39 F.3d 1482 (10th Cir. 1994)...........................................................................5

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2007).........................................................................14

*Newman v. Piggie Park Enterprises, Inc.*,
    390 U.S. 400 (1968)............................................................................................3

*Pa. v. Delaware Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986)..........................................................................................13

*Perdue v. Kenny A.*,
    559 U.S. 542 (2010)..........................................................................................10

*Phelps v. Hamilton*,
    120 F.3d 1126 (10th Cir. 1997).........................................................................3

*Ramos v. Lamm*,
    713 F.2d 546 (10th Cir. 1983)...................................................................10, 13

*Uselton v. Commercial Lovelace Motor Freight, Inc.*,
    9 F.3d 849 (10th Cir. 1993)................................................................................5

*Webb v. Board of Education of Dyer County*,
    471 U.S. 234 (1985)..........................................................................................13

*Wilson v. Stocker*,
    819 F.2d 943 (10th Cir. 1987)............................................................................3

*Zinna v. Congrove*,
    680 F.3d 1236 (10th Cir. 2012).........................................................................5

<u>STATUTES</u>

28 U.S.C. § 1920.................................................................................................15
42 U.S.C. § 1988(b) ......................................................................................passim

OTHER AUTHORITIES

*Law Firm Hourly rates*, Legal.io,
    https://perma.cc/X5ZK-5AQU ................................................................9

RULES

Fed. R. Civ. P. 54.................................................................................................5

Plaintiffs file this Motion for Attorneys' Fees in accordance with the permanent injunction ordered by the Court on December 11, 2024. Dkt. 58. Plaintiffs request a total of $366,044.60 in attorneys' fees and $10,550.14 in costs under 42 U.S.C. § 1988(b).

## INTRODUCTION

Defendants have agreed to be permanently enjoined from further violating Plaintiffs' First Amendment rights, and to pay nominal damages. Dkt. 58. As part of that permanent injunction, the parties agreed that the final amount of attorneys' fees would be determined by the Court. *Id.* ¶5. This motion for attorneys' fees follows.

Plaintiffs' counsel have worked tirelessly and quickly to litigate this suit in just four months. While offering to settle the case before and after the complaint was filed, as well as throughout the discovery period, Plaintiffs' counsel simultaneously ensured that this case was as streamlined and as efficient a use of judicial resources as possible.

Thus, Plaintiffs now move for an award of attorney fees and costs.

## RELEVANT FACTUAL BACKGROUND

On September 23, 2024, KFOR filed suit against Oklahoma State Superintendent of Public Instruction Ryan Walters and Oklahoma State Department of Education Press Secretary Dan Isett. Dkt. 1. The complaint details that Walters and Isett were violating Plaintiffs' First Amendment rights by repeatedly denying KFOR's reporters' access to Oklahoma State Board of Education (OSBE) meetings and subsequent press conferences held by Walters—all because of KFOR's editorial stance. *See id.* at 2–14.

Specifically, for meetings and press conferences held on March 28, June 27, July 31, and August 22, 2024—events open to news media—KFOR's reporters were (1) relegated

to an "overflow" room to watch the meetings via video feed, and (2) fully denied access to follow-up press conferences held by Walters. *See id*. KFOR sought declaratory and injunctive relief to ensure its ability to attend future OSBE meetings and press conferences. *See id*. at 15–18. Walters and Isett barred KFOR from these events on grounds that it is "fake news" and not a "legitimate" news organization, despite its credentials. *Id*. at 13.

On September 25, 2024, this Court granted Plaintiffs' temporary injunction motion, preserving their First Amendment rights as this case proceeded. Dkt. 14. Following a shortened discovery period, the parties were set to go to trial on December 11, 2024. Dkt. 21. Instead, on that same day, the parties entered into an agreement that the Court would issue a permanent injunction order against Defendants. Dkt. 58.

That final order required Defendants to (1) "Grant access for KFOR to all OSDE board meetings, press conferences, gaggles, or any other meetings held in which other news media are given nonexclusive access;" (2) "Grant KFOR's access to the RSVP notices OSDE sends to journalists prior to each meeting;" (3) "Grant KFOR (4@kfor.com) to email distribution list for all OSDE press releases and/or notifications related to OSDE activities following a meeting between the KFOR News Director and the OSDE Director of Communications at KFOR Studios;" (4) Grant KFOR's access to all OSDE "statements" issued to members of the general press in response to daily press inquiries;" and (5) "Re-establish the media line for journalists wishing to attend OSDE board meetings, subject to security concerns that may arise." Dkt. 58 at ¶¶3a – 3e.

The Order also required Defendants to pay $17.91 in nominal damages to Plaintiffs no

later than 30 days after issuance of the order. Because the parties could not agree to an attorneys' fees amount, the Order also requires the issue to be submitted to the Court for determination.

ARGUMENT

A plaintiff that succeeds in remedying a civil rights violation, serves "as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority." *Fox v. Vice*, 563 U.S. 826, 833 (2011) (quoting *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968) (per curiam)). That success entitles Plaintiffs to attorneys' fees under 42 U.S. Code § 1988(b). Success is measured not only by the relief obtained but also in terms of the significance of the legal issue on which the plaintiff prevailed and the public purpose the litigation served. *Farrar v. Hobby*, 506 U.S. 103, 122 (1992). An award of fees should also reflect that an order serves the public purpose of "vindicat[ing] important rights and deter[ing] future lawless conduct." *Phelps v. Hamilton*, 120 F.3d 1126, 1132 (10th Cir. 1997).

A fee request under 42 U.S.C. § 1988(b) entitles plaintiffs to attorneys' fees if they establish two elements: (1) that they were the "prevailing party" in the litigation; and (2) that their request is "reasonable." *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Phelps*, 120 F.3d at 1129; *Ellis v. University of Kansas Medical Center*, 163 F.3d 1186, 1193 (10th Cir. 1998). The Tenth Circuit has held that "the district court's discretion to deny fees to a prevailing plaintiff is quite narrow," and "[a] strong showing of special circumstances is necessary to support [such] a denial." *Wilson v. Stocker*, 819 F.2d 943, 951 (10th Cir. 1987).

3

Plaintiffs may be considered "prevailing parties" for attorneys' fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit. *Hensley*, 461 U.S. at 433 (internal citations and quotations omitted); *see also Farrar*, 506 U.S. at 111–12 ("a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."). This case involved a "fundamental" right: the First Amendment right of the press to news gather. *See, e.g., Branzburg v. Hayes,* 408 U.S. 665 (1972). And Plaintiffs obtained a stipulated court-ordered permanent injunction against Defendants that obtained all the relief requested in their suit, and additional relief beyond what was sought. Plaintiffs also obtained nominal damages, reenforcing their status as prevailing parties. *See Farrar*, 506 U.S. at 112 (holding that "a plaintiff who wins nominal damages is a prevailing party under [the attorney's fee statute] § 1988."). There is no question about Plaintiffs' prevailing party status. Thus, the lone consideration for this Court is whether Plaintiffs have established that their fee request is "reasonable."

The reasonableness of the attorney's fees must be determined "in light of both the traditional billing practices in the profession, and the fundamental principle that the award of a 'reasonable' attorney's fee under § 1988 means a fee that would have been deemed reasonable if billed to affluent plaintiffs by their own attorneys." *City of Riverside v. Rivera*, 477 U.S. 561, 591 (1986).

I.    THE LODESTAR FRAMEWORK

The touchstone of determining a reasonable fee award is the "lodestar" analysis.

*Zinna v. Congrove*, 680 F.3d 1236, 1242 (10th Cir. 2012). The "lodestar" calculation is based on "the total number of hours reasonably expended multiplied by a reasonable hourly rate-and then adjust the lodestar upward or downward to account for the particularities of the suit and its outcome." *Id.* (internal citations and quotations omitted). The lodestar figure "is the presumptively reasonable fee." *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1493 (10th Cir. 1994).

In assessing "the total number of hours reasonably expended," the Court may consider (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, 461 U.S. at 455; Fed. R. Civ. P. 54. Although the court must address these factors, not every factor will apply in the circumstances of a particular case. *See Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993).

In this case, the lodestar factors, as well as additional factors that justify a multiplier, support an attorneys' fees award of $366,044.60.

## A. The reasonable hourly rates should be calculated at the rate of Washington, D.C. attorneys.

Reasonable hourly rates under Section 1988(b) are based on the "prevailing market

rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Thus, a district court must first decide what the "relevant community" is geographically, and then what the "prevailing market rates" are for that community.

Although, typically, the relevant community will be the local area in which the suit is brought, that rule is not absolute. Where the litigation is "unusual or requires such special skills" that only an out-of-state lawyer possesses, the relevant community is the local area in which counsel is from. *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995). Plaintiffs submit this is a case, and involves attorneys, deserving of this exception to the "general rule." They further submit that KFOR-TV and its journalists within this Court's jurisdiction are also deserving of applying the exception.

This case involved a high stakes, urgent, and delicate First Amendment issue against a statewide elected official who has developed a reputation of being aggressive and litigious. The defendants in this case had been openly hostile to plaintiffs and had attempted to delegitimize them. The reputational harm, and potential additional loss of access, that could have befallen plaintiffs had they not prevailed was tremendous. Thus, there was little room for error, and plaintiffs needed counsel who could act adeptly to obtain emergency relief and ultimately prevail.

Plaintiffs reached out to Mr. Miller precisely because of his, and IFS', specialization in the novel issues presented by this press access First Amendment violation case. Miller Affd. ¶64. As Mr. Nelon attests, the options for a comparable level of expertise and skill in Oklahoma are limited. Nelon Affd. ¶¶5-6, 15(c). Hall Estill handles First Amendment

media cases primarily concerning defamation, privacy torts, and anti-SLAPP proceedings. *Id*. ¶5. Despite its wide–ranging media law practice, Hall Estill's experience involving civil rights claims of the government's denial of press access from limited public forums for arbitrary and viewpoint-based reasons is limited. *Id*.

While there are certainly other highly skilled attorneys in Oklahoma City who may litigate civil rights cases and other First Amendment cases, there are few, if any who have the level of experience and specialized knowledge regarding litigating press freedom and access cases the undersigned attorneys at the Institute for Free Speech have in the particularized legal issues presented by this First Amendment case. Indeed, in the minimal amount of press access jurisprudence relevant to this case that exists, there are *none* that counsel was able to find that were litigated in any Oklahoma Federal Court. Corbello Affd. ¶26. This, alone, should indicate that there are no local attorneys with similar experience in this area of law.

As the Declarations of Chip Miller and Courtney Corbello addresses, the attorneys at the Institute for Free Speech are training in, litigating and conducting research into these exact issues every day. Corbello Affd. ¶37. Both Ms. Corbello and Mr. Miller successfully litigated one other press access case earlier the same year as the complaint was filed in this case, have filed another suit as of January 22, 2025 in Utah, and have litigated numerous related First Amendment cases, and other civil rights cases, prior to 2024. Corbello Affd. ¶62; Miller Affd. ¶12.

In the end, the answer to the question - "are there local counsel available, willing, and able, with the degree of experience, expertise, or specialization required to handle cases

such as this case?" - is simply "no." This is an area of law where a national practice is needed. There are also the practical considerations that counsel without ongoing local ties are best suited to bring full-throated litigation against a statewide elected official who is on the rise. Based on these considerations and IFS' being based in the District of Columbia, the standard Washington D.C. rates of $655 for Ms. Corbello and $812 for Mr. Miller should be applied. *See* Corbello Affd. ¶72 (and attached exhibits); *see also* Miller Affd. ¶72.

This Court's granting the requested hourly fees sought by Ms. Corbello and Mr. Miller not only recognizes the situation in this case but could do what 42 U.S.C. § 1988(b) was put in place to encourage, *i.e.,* to attract competent attorneys—from outside of the Western District of Oklahoma, when needed—to help the disenfranchised, the marginalized, and the powerless, when government actors with malevolence put these people in their cross-hairs.

**B. In the alternative to awarding D.C. rates, the quality of counsels' work and unnecessarily protracted nature of this litigation justifies a lodestar multiplier of any Oklahoma City-based rate.**

Even if this Court were to award attorneys' fees based on the market rate in Oklahoma City, counsels' rates are still reasonably set at $655 for Ms. Corbello and $812 for Mr. Miller – and Mr. Nelon's rate of $575/hour – given the reasonable rates in Oklahoma City combined with the propriety of an enhancement in this suit.

Before applying a multiplier, this Court must arrive at a reasonable rate for counsel based on prevailing market rates in Oklahoma City. In 2022, this Court held that attorney hourly rates of between $250 and $475 are "in line with the prevailing market rates for

lawyers of comparable skill and experience practicing in the Oklahoma City area (i.e.,
Western District of Oklahoma)" in a civil rights action, generally. *Inst. for Just. v. Laster*,
No. CIV-19-858-D, 2022 U.S. Dist. LEXIS 231068, at *14 (W.D. Okla. Dec. 23, 2022);
*see also Catholic Benefits Ass'n LCA v. Azar*, No. CIV-14-240-R, 2018 WL 3876615, at
*12 (W.D. Okla. Aug. 15, 2018) (stating rates of between $250 and $470 are "customary
Oklahoma City rates" in a civil rights action). Inflation has only risen since. According to
the online Enterprise Legal Marketplace, Legal.io, and their review of hourly rates
submitted by local attorneys in Oklahoma City, the current hourly rate for litigation
attorneys in Oklahoma City averages between $233 to $591, with some attorneys
charging $800/hour. *Law Firm Hourly rates*, Legal.io, https://perma.cc/X5ZK-5AQU. As
attested to by Mr. Nelon – a 54-year attorney in Oklahoma – the hourly rates for an
attorney with his experience, who practice in this specialized area of media-related
litigation and First Amendment press access, are slightly higher above that range at
$575/hour. Nelon Affd. ¶15. This is the rate he charges to Nexstar for his work in this
and other matters.

Based on the aforementioned, the reasonable hourly rate for counsel – based on
Oklahoma City as the relevant community and applying the lodestar factors (*see*, *infra*) –
is $436/hour for Ms. Corbello, $541/hour for Mr. Miller and $575 for Mr. Nelon.
Corbello Affd. ¶¶74-75; Miller Affd. ¶73; Nelon Affd. ¶¶13–15. However, before
awarding fees based on these rates, this Court should also consider application of a
multiplier of 1.5. Although "[t]here is a strong presumption that the lodestar figure is
reasonable," that presumption is overcome where counsel shows that "the lodestar does

not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A.*, 559 U.S. 542, 554 (2010) (internal alterations and quotation marks omitted).

The Supreme Court has identified two factors that can be considered in addition to the lodestar factors to justify a multiplier. First, a multiplier is appropriate "where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value, as demonstrated in part during the litigation." *Id.* at 554-55. In other words, the "quality of the lawyer's performance in the case should also be considered in placing a value on his or her services." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983). Second, a multiplier "may be appropriate if the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted." *Perdue*, 559 U.S. at 555.

These factors are applicable in this case and justify a multiplier of 1.5. The Court has had several opportunities to gauge the quality of work performed by Plaintiffs' counsel. This work consisted of concise, well-reasoned briefing that took up no more judicial resources and time than absolutely necessary. Dkts. 4, 34, 46, 54. Each of Plaintiffs' motions for particular relief, or responses in opposition, were successful. *Id.* Additionally, Plaintiffs' counsel attempted prior to filing suit, upon the filing of suit, and in the months during discovery to continuously raise the suggestion of settlement (to no avail) in order to minimize the need for litigation as much as possible. Miller Affd. ¶¶21-24.

When Defendants were unwilling to settle, counsel then persuaded defense counsel to agree to an expedited litigation schedule that would not permit lengthy discovery battles

or unnecessary motions practice before this Court. Dkt. 19. It also avoided the need to hold both a preliminary injunction hearing and a final merits trial. Once the case was ultimately settled, Plaintiffs' counsel obtained results for their clients that were beyond what was sought in the prayer for relief in their Original Complaint, including relief for other media personnel in Oklahoma through re-establishment of the media line. *Compare* Dkt. 1 *with* Dkt. 58.

Moreover, although the case occurred over only 4 months, it was, nonetheless, "exceptionally protracted" by 3 months, 3 weeks and 6 days. The parties spent unnecessary time and expenses to litigate a matter that should have been rectified upon the filing of, if not prior to, Plaintiffs' motion for temporary restraining order. As this Court stated at the TRO hearing: "What perplexes me about this whole thing is why we are even here, honestly. I've thought about this since this was filed, and this just seems to me that this could have and should have been resolved in another way." TRO Hrg. Tr. 28:10-14. Before even engaging IFS as their counsel, KFOR attempted to resolve the matter with Ryan Walters and Dan Isett informally. Miller Affd. ¶20. And once Mr. Miller and Ms. Corbello became involved, they continued those attempts at informal resolution. Miller Affd. ¶¶21-24. Defendants resisted each and every effort. *Id*.

Defendants not only resisted settlement, they *admitted*, from the beginning of the suit, that they denied Plaintiffs because Defendants disagreed with the content and viewpoint expressed in KFOR's reporting. *See generally* TRO Hrg. Tr. 29:24 – 32:10, 30:18-21, 37:9-38:7; *see also* Dkt. 23. Thus, there was no reason that Plaintiffs should have been required to expend time and money litigating this case including (1) conducting and

responding to written discovery; (2) preparing for, travelling to, and taking or defending depositions; (3) creating and executing a litigation strategy; and (4) preparing for trial, including motions practice, and attending trial, where Defendants were clearly violating the Constitution and simply should have stopped doing so. Moreover, an enhancement on this basis would serve to discourage Defendants from engaging in similar behavior in the future in which they are completely unwilling to preserve judicial and plaintiff resources and come to a reasonable, timely resolution.

Additionally, because of the intensity that expedited litigation demands, especially when discovery disputes arise, perplexing jury demands are made, or a party pursues strange defenses—such as attempting to prove the falsity of news coverage, adept handling is necessary to keep the case on track. So, while the case was not "exceptionally protracted" in length compared to other types of 1983 cases, intensity is its own form of protraction.

Under Oklahoma prevailing rates, the standard rate for an attorney of Ms. Corbello's experience and skill would be $436. Corbello Affd. ¶¶74-75. And the standard rate for an attorney of Mr. Miller's experience and skill would be $541. Miller Affd. ¶73. Thus, even if this Court uses Oklahoma as the "relevant community," the application of a 1.5 multiplier justifies the rates of $655 for Ms. Corbello and $812 for Mr. Miller.

**C. Each attorney's background should be considered.**

Once the temporal and enhancement decisions are made, the "prevailing" rates must be determined. "[T]he burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those

prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 & n.11.

Both Mr. Miller, Mr. Nelon, and Ms. Corbello have submitted their own declarations regarding their experience and education, and the Court is asked to consider those, and to do so in the context of the explication of determining reasonable rates for attorneys of similar skill and experience in Washington D.C. and/or Oklahoma City. Corbello Affd. ¶¶53-63; Miller Affd. ¶3-15, 64; Nelon Affd. ¶ *passim*.

### D. Counsels' hours are reasonable

Plaintiffs are entitled to compensation for all time "reasonably expended on the litigation." *Webb v. Board of Education of Dyer County*, 471 U.S. 234, 242 (1985); *see also Hensley*, 461 U.S. at 440 ("prevailing party . . . compensated . . . for all hours reasonably expended by its attorneys"). The number of hours requested must be proven "by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case v. Unified School District No. 233, Johnson County, Kansas*, 157 F.3d 1243,1250 (10th Cir. 1998) (citing *Ramos*, 713 F.2d at 552).

Time is reasonably expended when it is "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." *Pa. v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986) (internal citation and quotations omitted). This includes all "compensation for work performed in preparing and presenting the fee application." *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1254 (10th Cir. 1998) (quoting *Mares v. Credit Bureau of Raton*, 801

F.2d 1197, 1205 (10th Cir. 1986)). As a general rule, courts "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2007). And "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435.

Counsel has submitted time sheets detailing all work provided on this case. Corbello Affd. ¶¶7; Miller Affd. ¶42; Nelon Affd. ¶¶11–12. All of the hours submitted for the Court's consideration are for work that was necessary to the litigation of this suit and no more than required to obtain a successful result. Corbello Affd. ¶¶16-24, 77; Miller Affd. ¶¶48-54; Nelon Affd. ¶12. Additionally, as explained *supra*, counsel obtained excellent results in this case beyond what their initial complaint demanded, which further justifies the hours counsel expended in this matter.

## II.    PLAINTIFFS ARE ENTITLED TO COMPENSATION FOR TIME SPENT ON THIS MOTION

In addition to requesting compensation for their attorneys' time in the merits litigation, Plaintiffs are also asking to be reimbursed for attorney time spent on this fee petition. *Littlefield v. Deland*, 641 F.2d 729, 733 (10th Cir. 1981) (holding that a party may receive attorneys' fees for work done "in resolving the fee issue itself."); *see also Iqbal v. Golf Course Superintendents Ass'n*, 900 F.2d 227, 229 (10th Cir. 1990).

Undersigned counsel made numerous attempts to settle this suit and, in doing so, to negotiate attorneys' fees so as to avoid the need for post-trial motions practice. *See* Miller Affd. ¶¶21-38. Counsel went so far as to cut their original attorneys' fees offer by 60% on the day of trial. Miller Affd. ¶35. But Defendants refused to agree to any amount of

fees, thus necessitating the extra time and resources to draft and litigate the present Motion. *Id*. As such, the fees that undersigned seek to prepare and litigate this motion are reasonable and should be awarded.

III.  PLAINTIFFS ARE ENTITLED TO REASONABLE COSTS OTHER THAN ATTORNEYS' FEES.

Rule 54(d) of the Federal Rules of Civil Procedure provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Under this rule, costs include clerk and marshal fees, court reporters' fees, printing and witness fees, copying fees, and certain docket fees. 28 U.S.C. § 1920. *Jane L.*, 61 F.3d at 1517. Other out-of-pocket expenses incurred during litigation may be awarded as attorneys' fees under Section 1988(b) if (1) the expenses are not absorbed as part of law firm overhead but are normally billed to a private client, and (2) the expenses are reasonable. *Id*. Plaintiffs' counsel has provided spreadsheets that includes all reasonable litigation costs including filing fees, deposition fees and other necessary expenditures by both IFS and Hall Estill. Corbello Affd. ¶¶9-11; Nelon Affd. ¶18.

Additionally, Plaintiffs' counsel should be rewarded for their travel costs. Travel "may be included in the concept of attorney's fees as incidental and necessary expenses incurred in furnishing effective and competent representation." *Brown v. Gray*, 227 F.3d 1278, 1297 (10th Cir. 2000) (internal citations and quotations omitted). Here, travel was necessary to counsel's representation of Plaintiffs. Counsel was required to appear in person at the TRO hearing, for depositions, and at trial/settlement. And counsels' level of expertise in this area of law, as well as the lack of availability of local counsel with the

same expertise, *see supra*, further justifies that travel. *D.H. v. Ponca City Indep. Sch. Dist. No. 71*, No. 06-CV-523 CVE-SAJ, 2007 U.S. Dist. LEXIS 66427, at *9 (N.D. Okla. Sep. 7, 2007) (awarding travel costs where counsel "ha[d] a very high level of expertise" in the specific area of law and the "[p]laintiffs could not have found the combination of lawyers with that expertise locally."). In an effort to compromise and seek only what is "reasonable," counsel made efforts to reduce their costs both in travel and in reporting to this court. During travel, Ms. Corbello utilized her military veteran's discount to obtain lower hotel rates for herself and Mr. Miller. And counsel shared rideshares and rental cars as much as possible when traveling together. Additionally, Ms. Corbello and Mr. Miller divided the defending and taking of depositions to ensure only one attorney was required to travel for those events. Corbello Affd. ¶12; Miller Affd. ¶43. And Mr. Miller took those depositions quickly – focusing only on the issues relevant to the suit in order to minimize court reporter and videographer fees. Miller Affd. ¶43. Also, in reporting to this Court, counsel has only sought the reimbursement of costs for flights and hotels, and transportation (rental cars or rideshare services) but not for parking, gas or meals.

Undersigned counsel has provided a separate spreadsheet detailing the costs and expenses, including the aforementioned travel expenses, associated with this suit, which total $10,550.14.

CONCLUSION

For the reasons explained above, Plaintiffs are entitled to recover and they request that the Court award $366,044.60 in reasonable attorneys' fees and $10,550.14 in costs and expenses.

Respectfully submitted.

*s/ Courtney Corbello*
Courtney Corbello*
Trial Counsel
Charles Miller*
Ohio Bar No. 0073844
Texas Bar No. 24097533
INSTITUTE FOR FREE SPEECH
1150 Connecticut Ave., NW, Ste 801
Washington, D.C. 20036
Tel: (202) 985-1644
cmiller@ifs.org
ccorbello@ifs.org
*Counsel for Plaintiffs*
*\*admitted pro hac vice*

Dated: February 10, 2025

Robert D. Nelon, OBA #6610
HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.
100 North Broadway, Suite 2900
Oklahoma City, OK 73102
Telephone: (405) 553–2828
Facsimile: (405) 553–2855
bnelon@hallestill.com
*Counsel for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2025, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing, which will transmit a Notice of Electronic Filing to all ECF registrants of record in this matter.

*s/ Courtney Corbello*
Courtney Corbello

17