UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

NEXSTAR MEDIA, INC. d/b/a KFOR-TV,
et al.,

     *Plaintiffs*,

v.

RYAN WALTERS, et al.,

     *Defendants*.

Case No. 5:24-cv-00980-J

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES
PURSUANT TO 42 U.S.C. § 1988(B)

INTRODUCTION

There is much Defendants do not dispute. *See* Dkt. 61. First, Plaintiffs secured a significant free speech victory that required Defendants to act precisely how they were refusing to act prior to this case being filed. Plaintiffs achieved relief beyond that sought in the case (restoration to media distribution lists). Plaintiffs also secured nominal damages. Second, Defendants' vigorous and unnecessary discovery tactics, jury demand, refusals to even negotiate until the eve of trial and failure to settle until the day of trial significantly drove up fees. Third, Plaintiffs' counsel acted professionally throughout, constantly explored settlement, and even ensured settlement on the day of trial instead of placing Defendants on the witness stand in front of the assembled media. Fourth, Defendants do not challenge any of Plaintiffs' time entries specifically, which indicates they have no dispute about what work was performed, only that counsel generally worked too much in the four months it took to bring this expedited case to trial.

Despite Plaintiffs securing a permanent injunction that prohibits Defendants from violating the First Amendment in several ways, as well as nominal damages, Defendants demand that Plaintiffs be awarded nothing. In the alternative, they seek to reduce the amount Plaintiffs ask for by making glaring misstatements about the history of this case and downplaying counsels' skill and experience in civil rights law.

ARGUMENT

I.   PLAINTIFFS ARE PREVAILING PARTIES REGARDLESS OF AN ADMISSION OF GUILT.

Plaintiffs received a permanent injunction in this case that altered Defendants' behavior by requiring them to cease their unconstitutional practices and restore all of

Plaintiffs' access they originally sought *as well as* additional access not demanded in the Complaint. Dkt. 58. Defendants did not need to "admit to any violation of their First Amendment rights" – the permanent injunction and nominal damages *are* the substantive relief on the merits achieved for the First Amendment violation. Dkt. 61 at 10.

Defendants cite no case that suggests an admission of guilt is required in a settlement to confer prevailing party status. Rather, for a settlement to confer prevailing party status, there need only be "some official judicial approval of the settlement and some level of continuing judicial oversight." *Verlo v. City & Cty. of Denver*, 789 F. App'x 709, 713 (10th Cir. 2019) (internal citations omitted); *see also Bell v. Bd. of Cty. Comm'rs*, 451 F.3d 1097, 1103 (10th Cir. 2006) (internal citations omitted) ("Most circuits recognize that some settlement agreements, even though not explicitly labeled as a 'consent decree' may confer 'prevailing party' status, if they are sufficiently analogous to a consent decree.").

Here, the permanent injunction was ordered by this Court and provides for judicial enforcement of the relief to which the parties agreed, thus materially altering their relationship. *See* Dkt. 58. Plaintiffs are "prevailing parties" under 42 U.S.C. § 1988(b). Defendants' argument taken to its ends means that, despite Plaintiffs achieving all substantive relief in this case, a trial (or at least summary judgment) remains necessary on the declaratory judgment claim to place an additional nail in the coffin. This would waste judicial resources and merely serve to further increase attorneys' fees.

II.    PLAINTIFFS' ATTORNEYS' FEES ARE REASONABLE.

Defendants argue that Plaintiffs are not entitled to attorneys' fees because (1) Nexstar, IFS and counsels' financial status should deprive them of a fees award; (2) litigation lasted four months; (3) counsel are not skilled attorneys; (4) counsel should have appeared remotely to depositions and hearings; (5) a declaration by a professor submitted in a different case indicates that Mr. Miller and Mrs. Corbello's rates are too high; and (6) the request harms the taxpayers. Each argument fails.

**A. A prevailing party's, and their counsels', financial status is irrelevant**

Neither Plaintiffs' nor their counsel's financial position is relevant in a fees award determination under Section 1988(b). Both "[p]laintiffs who can afford to hire their own lawyers, as well as impecunious litigants" are entitled to fees under Section 1988. *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989). After all, "Congress did not intend that the vindication of statutorily granted rights would depend on the private party's economic resources or on the availability of free legal assistance." *Milwe v. Cavuoto*, 653 F.2d 80, 83 (2d Cir. 1981) (quoting *Gore v. Turner*, 563 F.2d 159, 164 (5th Cir. 1978)); *Chapman v. AI Transp.*, 229 F.3d 1012, 1039 (11th Cir. 2000) ("[W]hen awarding costs a district court should not consider the relative wealth of the parties."); *Lavin v. Husted*, 764 F.3d 646, 651 (6th Cir. 2014) (reversing fees award because consideration of prevailing party's personal wealth was "not a valid reason for reducing their attorneys' fees.").

Considering counsels' financial status – whether it be IFS' assets or counsels' salaries – is similarly improper. "Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit

legal services organization." *Blum v. Stenson*, 465 U.S. 886, 894 (1984). Moreover, "fee awards ultimately benefiting legal services organizations, over and above their general or specific fund-raising efforts, help to ensure the continued existence of such organizations and their ability to represent other indigent parties who cannot afford private legal representation." *McLean v. Ark. Bd. of Educ.*, 723 F.2d 45, 48 (8th Cir. 1983). "[C]ountless examples" demonstrate that "courts construe the term attorney fees to mean, not the amount actually paid or owed by the party to its attorney, but the value of attorney services provided to the party." *Centennial Archaeology, Inc. v. Aecom, Inc.*, 688 F.3d 673, 679 (10th Cir. 2012). Thus, whatever counsel's payment arrangement – "hourly rate, flat rate, salary, contingency fee, pro bono" – the Court still must determine what amount "accurately reflect[s] the reasonable value of the services." *Id*. Neither IFS' assets, nor counsels' salaries, are reasons to deny or reduce an award.

### B. The parties litigated an entire case in four months

Defendants take issue with counsel being able to litigate an entire case in four months. Dkt. 61 at 34. Yet Defendants do not take issue with any specific time entries. Counsel performed every task in a four month period that would normally occur in a one to two year span – emergency relief briefing, written discovery requests, written discovery responses, discovery disputes, motion practice, depositions, third-party discovery, conferring with opposing counsel, compiling trial exhibits, preparing witnesses for trial, pre-trial motions in limine, exhibit and witness objections, settlement discussions, dispositive motion briefing and preparing for trial—culminating in a

courtroom settlement. This case was resolved with such speed *because* of the hours expended.

What was done in four months in this case was not the same as what was done in the cases Defendants rely on. *Calzone v. Hagan, et al.*, No. 2:16cv4278 (W.D. Mo. 2020) may have lasted longer than this case, but the parties quickly began discussions about a joint consent decree following the filing of a TRO motion, conducted no discovery and appeared by telephonic conferences set by the Court. A permanent injunction hearing was quickly held and the case then went on appeal to the Eighth Circuit. Dkts. 34-36. When it came back, the Court reduced the amount of attorneys' fees because plaintiff succeeded on only one claim. Dkt. 64.

Defendants' reliance on *Blue State Refugees, et al. v. Noem, et al.*, No. 3:21cv3024 (D.S.D. 2022) fares no better. After a TRO was filed, a hearing was never even held. Dkt. 14. Soon after, the parties agreed to a consent decree. Dkt. 18. *Noem* involved no hearings, discovery, depositions or trial. *Noem* had State defendants that quickly realized their actions were unconstitutional and worked with Plaintiffs to resolve the litigation. Defendants cannot say the same about this case.

A longer track would have cost more. Defendants originally sought to depose several irrelevant, out-of-state third parties from Nexstar Media – but ran out of time – and provided deficient discovery responses. *See* Dkt. 46 at 8-10 (MIL discussing Defendants' failure to produce documents in response to RFP's until after their depositions and the close of discovery). Additionally, had there been more time, Plaintiffs would have asked for a hearing on the motion for preliminary injunction and, after

discovery, filed a motion for summary judgment. Counsel saved Defendants a substantial amount of money by conducting this litigation the way they did.

**C. Counsel are skilled litigators in these cases.**

Counsels' extensive experience in civil rights litigation is documented. Dkts. 59-1, 59-2. Defendants ask this Court to consider only counsels' experience specifically in cases involving similar facts, but this ask is unreasonable. Courts routinely consider an attorneys' experience in the larger practice area when measuring their level of skill. *See, e.g., Case by Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1257 (10th Cir. 1998). Skill is also measured by considering whether counsel engaged in "thorough and extensive briefing addressing the factual and legal issues involved in this case." *Hartford Life & Accident Ins. Co. v. Jones-Atchison*, No. CIV-17-654-D, 2018 U.S. Dist. LEXIS 61401, at *7-8 (W.D. Okla. Apr. 11, 2018). Plaintiffs' counsel engaged in such briefing and are all highly skilled trial lawyers with backgrounds in private practice, government representation, and judicial service, undertaking high-stakes, complex, challenging, and novel cases and issues in state and federal trial, appellate and supreme courts across the country—often in expedited cases—and on both sides of the "*v.*" in First Amendment and other civil rights cases. Given these considerations, counsels' rates are appropriate.

**D. Counsel should be reimbursed for travel time and expenses.**

A fees award should not be reduce based on Defendants' wish that IFS counsel appeared on Zoom for depositions and hearings rather than travel to Oklahoma. Travel may be included in an award as "incidental and necessary expenses incurred in furnishing effective and competent representation." *Brown v. Gray*, 227 F.3d 1278, 1297 (10th Cir.

2000) (quotation omitted). Counsel cannot provide effective or competent representation when appearing over video call for every deposition and court hearing in a case, especially when their clients, opposing counsel, and the defendants are all present live. *See Burton v. Vectrus Sys. Corp.*, 834 F. App'x 444, 448 (10th Cir. 2020) (district court reasonably awarded travel costs given "the benefit of conducting an in-person deposition, rather than a remote one."). Additionally, Defendants' refusal to schedule Plaintiffs' depositions back-to-back with Defendants' depositions contributed to these costs. The suggestion that counsel for one side should appear remotely while witnesses are in the courtroom or being deposed cannot be taken seriously. Travel is a reasonable time and cost for this Court to consider in awarding fees.

### E.  Professor Thai's declaration supports counsels' request for attorneys' fees.

Defendants submit a declaration from another attorney who requested a $500 hourly rate in a different First Amendment case that concluded in 2021. Dkt. 61-2. But the declaration proves Plaintiffs' attorney fees request is reasonable.

Professor Thai asked for a *discounted* $500/hour in that case for work performed in 2015-2021, stating that "much higher rates would be reasonable." *Id*. at 12. He then cited other declarations for the proposition that $500/hr is "well below the regional average for lawyers with his background and experience" and he would be reasonable to "charge between $700 and $900 per hour." *Id*. Given this was filed four years ago, Professor Thai's declaration - particularly alongside Bob Nelon's declaration and the

enhancements Plaintiffs request[1] – fully supports the rates counsel is asking for. And at the very least, the Thai declaration sets a $500 per hour floor for the fee rate.

**F. Defendants' delayed concern for the taxpayers does not justify reduction.**

Defendants make several references to the burden that Plaintiffs' attorneys' fees may place on the taxpayers of Oklahoma. But it was Defendants who ignored this Court's warning that this case was easily resolvable and instead forced months of litigation. Defendants' argument that this Court spare taxpayers by not awarding fees is really just an argument that Defendants should not face repercussions for their actions. If the Court is concerned for the Oklahoma taxpayer, then it should explain to them exactly why Defendants' actions have led to a fees award. The taxpayer can then determine what consequences, if any, befall Defendants. This Court should not shield Defendants from the results of their intentional choices.

III.    PLAINTIFFS ARE ENTITLED TO COSTS.

Defendants object to specific expenses that Plaintiffs seek reimbursement of, but their objections lack merit and should not be used as grounds to reduce costs.

*Pro Hac Vice Fees and Travel*. Defendants argue these expenses should not be reimbursed because "counsel has not met its burden to show why local counsel could not

---

[1] Although Defendants state "enhancement is not warranted" in a subsection title (Dkt. 61 at 16), they do not discuss the two additional factors Plaintiffs asked this Court to consider pursuant to *Perdue v. Kenny A.*, 559 U.S. 542, 554 (2010) to apply a multiplier: (1) the quality of the lawyer's performance in the case; and (2) where the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted. Dkt. 59 at 15.

have handled this litigation."[2] Dkt. 61 at 35. The first argument ignores the evidence

presented through both Mr. Nelon's and Mrs. Corbello's affidavits, which Defendants

never rebut with their own evidence. *See* Dkt. 59-3 at 2 ("[Hall Estill's] experience in

handling a civil rights claim such as the one in this case is limited[.]"); *see also* Dkt. 59-1

at 7-8 (discussing lack of available local counsel). Moreover, "[b]ecause pro hac vice fees

are normally itemized and billed to the client, . . . plaintiffs should recover the pro hac

vice fees they paid in [a] case." *Awad v. Ziriax*, No. CIV-10-1186-M, 2014 U.S. Dist.

LEXIS 57648, at *7 (W.D. Okla. Apr. 25, 2014).

*UPS fees*. The same day they initiated this suit, Plaintiffs' counsel mailed flash

drives containing the video Exhibits A-C to the TRO Motion to the Court and opposing

counsel to ensure that, if the link provided did not work, the videos were still viewable

prior to a hearing on Plaintiffs' TRO Motion. Moreover, the Court's rules states that

parties may only electronically file .pdf-formatted documents. ECF Policies &

Procedures Manual, § II(A)(1)(b). The videos were in .mp4 format, thus necessitating the

flash drives to ensure the exhibits were properly before the Court. Because postage is

recoverable expense under Section 1988 and was reasonably necessary to the case,

Plaintiffs are entitled to reimbursement for their UPS costs. *See Salazar v. District of*

*Columbia*, 991 F. Supp. 2d 39, 61 (D.D.C. 2014) (finding plaintiffs were entitled to

---

[2] Defendants also object to travel costs on the basis that counsel should have appeared remotely. This has been rebutted. *See*, *supra*, Section II.D. Travel costs are a reasonable expense and counsel limited those expenses by using discounts, splitting the deposition schedule, and cutting out specific expenses. Dkt. 59 at 21. Plaintiffs should be reimbursed for their itemized travel expenses.

reimbursement for postage under Section 1988); *see also D.H. v. Ponca City Indep. Sch. Dist. No. 71*, No. 06-CV-523 CVE-SAJ, 2007 U.S. Dist. LEXIS 66427, at *11 (N.D. Okla. Sep. 7, 2007) (reimbursing costs, including postage, that were "'necessarily obtained' within the meaning of 28 U.S.C. § 1920(4).").

*Transcripts*. Although counsels' check for the Shaw, Josefy and Brown deposition transcripts were not cashed until January 24, 2025, that does not mean they were not obtained prior to trial. The transcripts were delivered to counsel on November 25, 2024. **Exhibit 1**. As is a typical practice, the bill was sent in the mail after delivery of the transcripts to local counsel. Dkt. 59-1 at 73-74. Those invoices are dated December 6, 2024, also before trial. Dkt. 59-1 at 73-74. The date the check was cashed is not relevant. Additionally, defense counsel was present at these depositions on November 18 and 19, 2024 when Mrs. Corbello asked the court reporter for expedited transcripts given the imminent trial date. The transcript costs should be reimbursed.

CONCLUSION

"[T]he degree of success is the most critical consideration in determining the reasonableness of a fee." *Bell v. Bd. of Cty. Comm'rs*, 451 F.3d 1097, 1104 (10th Cir. 2006). Here, Plaintiffs succeeded on behalf of themselves and other journalists in ensuring Defendants are no longer able to violate the First Amendment rights of reporters in Oklahoma whose stories Defendants dislike. That warrants the award of fees and costs that Plaintiffs have requested.

Respectfully submitted.

*s/ Courtney Corbello*
Courtney Corbello*
Trial Counsel
Charles Miller*
Ohio Bar No. 0073844
Texas Bar No. 24097533
INSTITUTE FOR FREE SPEECH
1150 Connecticut Ave., NW, Ste 801
Washington, D.C. 20036
Tel: (202) 985-1644
cmiller@ifs.org
ccorbello@ifs.org
*Counsel for Plaintiffs*
*admitted pro hac vice*

Dated: February 28, 2025

Robert D. Nelon, OBA #6610
HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.
100 North Broadway, Suite 2900
Oklahoma City, OK 73102
Telephone: (405) 553–2828
Facsimile: (405) 553–2855
bnelon@hallestill.com
*Counsel for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2025, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing, which will transmit a Notice of Electronic Filing to all ECF registrants of record in this matter.

*s/ Courtney Corbello*
Courtney Corbello

11